UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAMELL HURKES

                Plaintiff,

v.                                                 Case No. 20-cv-1214-pp

KURT J. SCHIERLAND,
ANTHONY M. BOURASSA,
and JOHN DOC,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND DENYING MOTION TO APPOINT COUNSEL (DKT. NO. 8)

      Plaintiff Tramell Hurkes, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 when they ignored his assertions that he was having suicidal thoughts. Dkt. No. 1. This order resolves the plaintiff's motion to proceed without prepaying the filing fee, dkt. no. 2, screens the complaint, dkt. no. 1 and denies without prejudice the plaintiff's motion to appoint counsel, dkt. no. 8.

**I.**     **Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those

1

conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Generally, once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 14, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $29.49 by September 4, 2020. Dkt. No. 8. The court received that fee on September 3, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d

2

714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Allegations in the Complaint

The plaintiff states that between 7:00 and 8:45 p.m. on February 21, 2020, he told defendant Anthony Bourassa that he was having suicidal

3

thoughts, but Bourassa ignored him. Dkt. No. 1 at 3. The plaintiff says he then started yelling out of his cell door that he was having suicidal thoughts; after a few minutes of doing that, he sat down and started to wait for the segregation sergeant. Id. Defendant Sgt. Schierland came to his cell. Id. The plaintiff asserts that he told Schierland that he was suicidal but that Schierland ignored him and walked off. Id. at 3-4. The plaintiff says that Schierland "ignored me a psychological doctor or supervisor," id. at 3; the court assumes he means that Schierland did not report plaintiff's suicidal thoughts to psychiatric services or escalate the situation to a supervisor.

The plaintiff then pressed his emergency button and told defendant John Doc, who was working in the control station, that he was feeling suicidal. Id. at 4. The plaintiff says that Doc asked, "was the Sgt. at your door," and when the plaintiff said yes, Doc asked what "he"—the sergeant—had said. Id. The plaintiff related that Schierland had ignored him. Id. The plaintiff says that Doc told him, "If [Schierland] ignored you, it's nothing I can do." Id.

The plaintiff states that at that point, he "felt there was nothing else to do than to commit suicide." Id. He took his bed sheet and wrapped it around his neck, hanging himself. Id. He alleges he was unresponsive and woke up to staff "doing chest compressions." Id. He says that he almost died, and that he had a very bad neck pain injury from hanging himself. Id.

The plaintiff seeks "$50,000 and a sorry." Id. at 6.

4

C.  Analysis

The plaintiff asks to proceed against Bourassa, Schierland and Doc for "failure to protect, deliberate indifference" and "failing to intervene and prevent harm." Id. at 5. These claims implicate the Eighth Amendment's prohibition against cruel and unusual punishment. "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively sufficiently serious and a substantial risk to his or her health and safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006) (citing Matos *ex rel.* Matos v. O'Sullivan, 335 F.3d 553, 556 (7th Cir. 2003)). Where the substantial risk to the plaintiff is a risk of suicide, "[t]o plead an Eighth Amendment claim, [a plaintiff] need[s] to allege plausibly that prison staff (1) knew of a significant likelihood that he would imminently attempt suicide, and (2) failed to take reasonable steps to prevent his attempt." Davis-Clair v. Turck, 714 F. App'x 605, 606 (7th Cir. 2018) (citations omitted).

The plaintiff alleges he told all three defendants he was having suicidal thoughts. He also alleges they ignored him and he appears to allege that they did not contact psychiatric services or a supervisor. The plaintiff alleges that all three defendants did nothing. He then used his sheet to hang himself and, he says, nearly died. The plaintiff has alleged sufficient facts to allow

5

him to proceed on an Eighth Amendment claim against the defendants for deliberate indifference to the risk that he would harm himself and for failure to prevent that harm.

### III. Motion to Appoint Counsel (Dkt. No. 8)

The plaintiff also filed a motion asking the court to appoint counsel. Dkt. No. 8. The plaintiff says that he can't afford a lawyer and has limited knowledge of the law, that his claims are complex and that he has limited access to the law library due to the COVID-19 pandemic. Id. at 1-2. The plaintiff also says that more than thirty days before he filed his motion, he wrote letters to three attorneys asking them to take his case; he says only two wrote him back and they said they did not have time. Id. The plaintiff attached the two letters he received from the lawyers who declined to represent him. Dkt. No. 8-1.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been

6

effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the

7

plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first Pruitt factor; he asked three lawyers to represent him and has shown that two of them declined to do so and he hasn't heard from the third. But the court believes that the plaintiff can represent himself at this stage of the case. The case involves a single claim and, despite what the plaintiff indicates, simple facts: he told the defendants he was having suicidal thoughts, they ignored him and he attempted suicide, risking his life and injuring himself. The plaintiff provided the court with the "who, what, where, when, how" information it needed to understand what had happened. The next step is for the defendants answer the complaint—the plaintiff does not need to do anything during that stage. After the defendants answer, the case will move into the "discovery" phase. "Discovery" is a process where the parties send each other written questions ("interrogatories") and requests for documents. The plaintiff does not need to do legal research or understand the law to ask the defendants questions about what happened to him or to ask them for documents relating to the events he described in the complaint.

After discovery, there will be an opportunity for the parties to file dispositive motions, such as motions for summary judgment. "Summary judgment" is when a party believes that there is no significant disagreement between the parties as to the facts and the law says that that party is entitled to judgment. If a defendant files a motion for summary judgment in this case, the plaintiff will not need to do legal research or understand the law to

8

respond. He knows the facts of his case, as his complaint demonstrates. He will be able to tell the court whether he disputes the defendants' version of the facts and what the disputes are.

Because the plaintiff's filings to date indicate that he is capable of clearly communicating what happened, the court believes he will be able to participate in discovery and respond to a summary judgment motion and tell his side of the story. The court will deny without prejudice the plaintiff's motion to appoint counsel. If his circumstances change, or the plaintiff encounters obstacles that he does not believe he can handle on his own, he may renew his motion.

## IV.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 8.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Kurt J. Schierland, Anthony M. Bourassa and John Doc. Under the informal service agreement, the court **ORDERS** the defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$320.51** balance of the filing fee

9

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the institution where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Stephen C. Dries for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide titled "Answers to Prisoner Litigants' Common Questions," which contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 17th day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**