UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAMELL HURKES,

        Plaintiff,

       v.                            Case No. 20-cv-1214-pp

KURT J. SCHIERLAND, *et al.*,

        Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION AND AMENDED MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 23, 30) AND DISMISSING CASE

---

Tramell Hurkes, formerly in state custody and representing himself, is proceeding under 42 U.S.C. §1983 on claims against three correctional officers at Green Bay Correctional Institution. The defendants have moved for summary judgment. Dkt. Nos. 23, 30 (amended motion). The plaintiff has not opposed the motion. The defendants are entitled to judgment as a matter of law and the court will grant that judgment and dismiss the case.

## I.    Facts

### A.    Procedural Background

On August 10, 2020, the plaintiff filed a complaint Anthony Bourassa, Sergeant Kurt Schierland, and "John Doc," alleging Eighth Amendment violations. Dkt. No. 1. At the time, the plaintiff was in custody at Green Bay Correctional Institution. Id. at 1, 7. The court screened the complaint and allowed the plaintiff to proceed against those three defendants on a claim that they failed to protect him from harming himself and were deliberately indifferent to his risk

of self-harm. Dkt. No. 9 at 5–6. The court also denied the plaintiff's motion to recruit counsel to represent him. Id. at 8–9.

The court referred the case to Magistrate Judge Stephen C. Dries for pretrial management. Dkt. No. 10. Counsel appeared for the defendants, dkt. no. 11, and notified the court that the correct identity of "John Doe" was Correctional Officer Stephen Luedeman, dkt. no. 13 at 1. Once the two properly identified defendants had answered the complaint, dkt. no. 14, the court ordered the Clerk of Court to substitute "John Doe" with the proper defendant, Stephen Luedeman, dkt. no. 15. The court ordered Luedeman to file a responsive pleading within sixty days. Id. Luedeman timely filed an answer on April 5, 2021. Dkt. No. 19. In the meantime, the plaintiff notified the court that he had been released from custody; he provided the court with his new address in Milwaukee, Wisconsin. Dkt. No. 18. The court updated the plaintiff's address on the docket.

On October 7, 2021—the deadline the court's April 6, 2021 scheduling order had set for filing dispositive motions—the defendants filed a motion for summary judgment. Dkt. No. 23. The next day, they filed an amended motion for summary judgment, which—as Civil Local Rule 56(a)(1)(B) (E.D. Wis.) requires—included copies of Fed. R. Civ. P. 56 and Civil L.R. 7 and 56 that had not been included with the first motion. Dkt. No. 30. The same day, the court issued an order advising the plaintiff that his response materials were due by the end of the day on November 8, 2021 (within 30 days), under Civil L.R. 56(b)(2). Dkt. No. 31. The court advised the plaintiff that if the court did not receive the plaintiff's responsive materials by the end of the day on November 8, 2021, the court would "treat the defendants' motion as unopposed, accept all facts asserted by the

2

defendants as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff." Id. at 2. The court explained that that meant it "likely [would] grant the defendants' motion and dismiss the case." Id.

The November 8, 2021 deadline has passed, and the plaintiff has not responded to the defendants' motion or disputed their proposed findings of fact. Nor has he filed a letter providing any reason why he cannot respond to the motion. He has not advised the court of any change in address and the court's October 8, 2021 order was not returned to the court as undeliverable. Consistent with that October 8, 2021 order, the court considers the following facts undisputed for purposes of this decision.

B.    Factual Background

The plaintiff was incarcerated at Green Bay during the period relevant to this case. Dkt. No. 25 at ¶1. Defendant Schierland was a Correctional Sergeant at Green Bay. Id. at ¶2. Defendants Bourassa and Luedeman were Green Bay correctional officers. Id. at ¶3.

On February 21, 2020, the plaintiff was incarcerated in the 300 wing of the restricted housing unit (RHU) at Green Bay. Id. at ¶4. Officer Luedeman was assigned to the RHU control room (or "bubble"), where he had access to an intercom system connected to the cells of those housed in the RHU. Id. at ¶5. Sometime after 5:00 p.m., the plaintiff used his emergency button to call the bubble. Id. at ¶6. The plaintiff told Luedeman he felt suicidal and asked that a sergeant come to his cell. Id. at ¶7. The plaintiff did not state that he was harming himself or that he had any plans to do so. Id. at ¶8. Luedeman

immediately told Schierland about the plaintiff's call because Schierland was the sergeant assigned to the RHU on February 21, 2020. Id. at ¶¶9–10.

Shortly after speaking with Luedeman, Schierland walked down the 300 wing of the RHU and stopped at the plaintiff's cell. Id. at ¶11. Schierland was wearing a body camera, which was recording. Id. Luedeman watched Schierland walk down the 300 wing to the plaintiff's cell. Id. at ¶12. The plaintiff asked Schierland if he could go into an RHU observation cell, which request Schierland denied. Id. at ¶¶13–14. The plaintiff said that he could "go on obs anyway." Id. at ¶15; Dkt. No. 29-1 (Video Exhibit) at 0:34. Schierland told the plaintiff that he would not place the plaintiff in an observation cell unless the plaintiff was placed on observation status. Dkt. No. 25 at ¶16. He explained, "If you go onto obs, I'll put you there, but we are not going to put you in an obs cell." Dkt. No. 28 at ¶12; Dkt. No. 29-1 (Video Exhibit) at 0:35–0:38. The plaintiff replied, "OK then, I'm ready." Dkt. No. 25 at ¶17; Dkt. No. 29-1 (Video Exhibit) at 0:38.

During this conversation, the plaintiff did not make any statement about suicide or harming himself and did not state why he wanted to be placed in an observation cell. Dkt. No. 25 at ¶18; Dkt. No. 28 at ¶16. Schierland did not observe any signs that the plaintiff was actively engaging in self-harm. Dkt. No. 28 at ¶17. Schierland later left the 300 wing without speaking with the plaintiff again. Dkt. No. 25 at ¶18. Schierland avers in his affidavit that incarcerated persons often ask to move cells, including asking to be moved into an observation cell, but that they are placed in an observation cell only once they have been placed on observation status by a Psychological Services Unit staff member. Dkt. No. 28 at ¶14. Schierland avers that he does not have the authority to place an

4

inmate into observation status. Id. Because Schierland walked off the wing after speaking with the plaintiff, Luedeman "assumed [the plaintiff] was not at imminent risk of hurting himself." Dkt. No. 26 at ¶13.

After Schierland left the 300 wing, the plaintiff again pressed his emergency call button to call the bubble. Dkt. No. 25 at ¶19. The plaintiff complained to Luedeman that Schierland had not done anything, but he did not express any intent to harm himself. Id. at ¶20. The plaintiff reiterated that he felt suicidal. Id. at ¶21. Because the plaintiff confirmed to Luedeman that he'd just spoken with Schierland and because the plaintiff made no statements about harming himself, Luedeman told the plaintiff there was nothing more he could do. Id. at ¶22. Luedeman avers that if the plaintiff had made any further statements suggesting he was going to harm himself, Luedeman would have again contacted security staff to alert them about the situation. Dkt. No. 26 at ¶16.

Schierland returned to the 300 wing just before 6:30 p.m. to escort an inmate to general population. Dkt. No. 25 at ¶23. He was again wearing a body camera that was recording. Id. The plaintiff did not say anything to Schierland about suicide or harming himself. Id. at ¶24; Dkt. No. 29-2 (Video Exhibit) at 0:00–1:04. As Schierland exited the 300 wing, he asked Officer Bourassa to speak with the plaintiff. Dkt. No. 25 at ¶25; Dkt. No. 29-2 (Video Exhibit) at 1:27–1:29. Schierland avers that he asked Bourassa to check on the plaintiff because he knew the plaintiff "had been having issues earlier in the shift and wanted someone to check on him." Dkt. No. 28 at ¶21.

Bourassa was assigned as a relief officer in the RHU. Dkt. No. 25 at ¶26. At around 6:30 p.m., immediately after speaking with Schierland, Bourassa walked

down the 300 wing to the plaintiff's cell. Id. at ¶27. Like Schierland, Bourassa was wearing a recording body camera. Id. The plaintiff called out to Bourassa, who asked the plaintiff, "What's going on?" Id. at ¶28; Dkt. No. 29-3 (Video Exhibit) at 0:50. The plaintiff told Bourassa that he had told the Psychological Services Unit about his "suicidal thoughts." Dkt. No. 25 at ¶29; Dkt. No. 29-2 (Video Exhibit) at 0:56–1:03. The plaintiff then stated, "I get to cutting myself, is that what you all want?" Dkt. No. 25 at ¶30; Dkt. No. 29-2 (Video Exhibit) at 1:10–1:12. Bourassa responded, "Nope, not at all." Dkt. No. 25 at ¶30; Dkt. No. 29-2 (Video Exhibit) at 1:13–1:14. Bourassa confirmed that the plaintiff had recently spoken with Schierland and told the plaintiff he would speak with Schierland. Dkt. No. 25 at ¶31; Dkt. No. 29-3 (Video Exhibit) at 1:18–1:24. The plaintiff did not tell Bourassa that he planned to act on his suicidal thoughts. Dkt. No. 25 at ¶32. During his conversation with the plaintiff, Bourassa did not observe any signs that the plaintiff was actively engaging in self-harm or any signs of injury, including when the plaintiff displayed his arm at the cell window. Id. at ¶33; Dkt. No. 29-3 (Video Exhibit) at 1:08–1:09. Bourassa avers that, based on this conversation, he did not believe the plaintiff was in imminent danger of hurting himself. Dkt. No. 27 at ¶13. He avers that if the plaintiff had been actively engaging in self-harm or had told Bourassa he was going to hurt himself, he would not have left the plaintiff's cell, would immediately have used his radio to call for help, would have notified a sergeant and would have taken steps to stop the plaintiff from harming himself. Id.

At around 7:30 p.m., as Bourassa was doing medication pass, he and another officer (who is not a defendant) saw that the plaintiff had covered his cell

window. Dkt. No. 25 at ¶34. Bourassa knocked on the plaintiff's cell door and called out his name, but the plaintiff did not respond. Dkt. No. 27 at ¶16. Bourassa called the sergeant on duty while the other officer looked into the plaintiff's cell through the food trap and stated there was a medical emergency. Id.; Dkt. No. 25 at ¶35. Bourassa looked through the plaintiff's cell food trap and saw the plaintiff lying on his side with a ligature secured to a shelf and tied around his neck. Dkt. No. 25 at ¶36. The plaintiff appeared to be breathing. Id. Moments later, Lieutenant Michael Cole (who is not a defendant) arrived at the plaintiff's cell and directed the plaintiff to come to the cell door. Id. at ¶37. When the plaintiff did not respond, Cole ordered security staff into the cell. Id. at ¶38. Staff entered the cell and cut away the ligature around the plaintiff's neck. Id. Staff provided the plaintiff medical attention until members of the Health Services Unit arrived and took over treatment. Id. at ¶39. Staff helped the plaintiff into a wheelchair and escorted him to the Health Services Unit for further treatment. Id. at ¶40. During the plaintiff's' medical assessment, medical staff observed that the plaintiff was alert and reported no subjective pain, there were no marks around his neck, his breathing was unlabored, his heart rate was regular and he was swallowing normally. Id. at ¶41; Dkt. No. 29-4 at 2–3. The plaintiff was released from the Health Services Unit and placed on observation status. Dkt. No. 25 at ¶42.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

B.    Eighth Amendment Standard

The court reviews the plaintiff's claim that the defendants failed to protect him from self-harm under the Eighth Amendment's prohibition against cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates"). An Eighth Amendment claim consists of both objective and subjective components. Farmer, 511 U.S. at 834. To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from an inmate's act or threat of self-harm "up to and including suicide." Miranda v. Cty. of Lake, 900 F.3d 335, 349 (7th Cir. 2018). The plaintiff must show that there

8

was "a tangible threat to his safety or well-being" or, in other words, a risk "so great that it is almost certain to materialize if nothing is done." Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011) (citing Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008); and Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005)).

To satisfy the subjective component, the plaintiff must demonstrate that the defendants acted with the requisite intent, that is, that they had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. Prison officials cannot be found liable under the Eighth Amendment unless they subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. Id. at 837; Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. Farmer, 511 U.S. at 838. In short, the evidence must evince the prison officials' "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

C.  Analysis

The undisputed facts show the plaintiff did not tell any of the defendants he was engaging in self-harm or that he intended to harm himself. The most he said to any defendant was the statement to Officer Luedeman that he was feeling suicidal. Sergeant Schierland avers that the plaintiff never told him the plaintiff was feeling suicidal and did not state or show an intent to harm himself. The plaintiff told Officer Bourassa that "I get to cutting myself," but he did not state that he *was* cutting himself or that he *was going* to cut himself. Dkt. No. 25 at

9

¶30. Bourassa avers that the plaintiff's statements and appearance did not suggest to him that the plaintiff was harming himself or was at risk of immediately harming himself.

The Court of Appeals for the Seventh Circuit has held that a prisoner's statements that "he was 'hearing voices,' his 'father was taunting [him],' and he 'wanted to commit suicide'" were not sufficient to put prison officials on notice of the incarcerated person's intent to harm himself. Johnson v. Garant, 786 F. App'x 609 (7th Cir. 2019). Officers in Johnson recalled the incarcerated person asking "to see a [Crisis Intervention Team] member because he was feeling suicidal." Id. (internal quotation marks omitted). But no officer recalled the plaintiff stating that "he 'intended to immediately harm himself.'" Id. When officers ignored the plaintiff's statements, the plaintiff "attempted suicide by burning his arm with a roll of toilet paper that he set on fire." Id. The Seventh Circuit affirmed the district court's order granting summary judgment for the defendant–officers. Id. at 610. The court concluded that no reasonable jury could "find that the defendants knew of a substantial risk of suicide based only on Johnson's statements that he felt suicidal and wanted to speak to a crisis counselor." Id. Johnson's statements provided no "indication that he may have 'imminently' sought to have harmed himself." Id. (quoting Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006)). The court agreed with the district court that Johnson's statements "were insufficient to create a triable issue about whether the officers were subjectively aware of a substantial risk that Johnson would imminently attempt suicide." Id. at 611.

The Johnson court distinguished a similar case, finding liability where a incarcerated person wrote out "a last will and testament," previously had attempted suicide and stopped eating, and the incarcerated person's mother had called the prison to warn officials that her son was suicidal. Id. at 610 (discussing Sanville v. McCaughtry, 266 F.3d 724, 737–38 (7th Cir. 2001)). Those additional facts, not present in Johnson, put the defendants in Sanville "on notice that the plaintiff's statement was not idle." Id. at 611.

Another court in this district has relied on Johnson to reach the same conclusion. In Williams v. Stacy, the court concluded that the incarcerated person's statement that "he was having suicidal thoughts" was insufficient to put prison officials on notice of a substantial risk of suicide. No. 18-C-1426, 2020 WL 6136148, at *2 (E.D. Wis. Oct. 19, 2020), appeal dismissed sub nom. Williams v. Eckstein, No. 20-3228, 2021 WL 1978369 (7th Cir. Feb. 2, 2021). The court noted that the presence of a sharpened pen in the plaintiff's cell did not alert officials to a risk of harm, and no other evidence suggested that officials should have known the prisoner "had the means to harm himself or that the risk of future harm was sure or very likely." Id. (quoting Johnson, 786 F. App'x at 610, which noted that "'[t]he presence of common items in his cell . . . does not change the analysis'"). Because there was no evidence that the defendant "knew of an obvious risk that [the prisoner] would harm himself with a sharpened pen but ignored that risk," the plaintiff's claim failed as a matter of law. Id.

A court in the Western District of Wisconsin recently relied on Johnson in a similar case where an incarcerated person told prison officials only "that he was 'having suicidal thoughts'" and told another official "that he wanted to see

someone from psychological services." <u>Wright v. Funk</u>, No. 19-CV-37-JDP, 2020 WL 4219845, at *1 (W.D. Wis. July 23, 2020), <u>aff'd</u>, 853 F. App'x 22 (7th Cir. 2021). Prison officials did not come to the incarcerated person's cell, and about four hours later he announced that he had swallowed "around 50 pills." <u>Id.</u> The court concluded that <u>Johnson</u> "forecloses [the plaintiff's] claim" because the evidence showed he told the officials only "'that he planned to commit suicide." <u>Id.</u> at *2 (quoting <u>Johnson</u>, 786 F. App'x at 610). The Seventh Circuit affirmed that decision, concluding that the incarcerated person's statement "that he was having suicidal thoughts and would like to speak with someone from the psychological services unit" did not put prison officials on notice that the prisoner "would imminently attempt to harm himself." <u>Wright v. Funk</u>, 853 F. App'x 22, 24 (7th Cir. 2021). The court also noted that prison officials immediately responded once the plaintiff had taken the pills and sent him to a hospital for treatment. <u>Id.</u>

The facts in this case are indistinguishable from <u>Johnson</u>, <u>Williams</u> and <u>Wright</u>. The plaintiff told Luedeman he was "feeling suicidal" and asked for a sergeant. Luedeman immediately called for a sergeant (Schierland), who reported to the plaintiff's cell. The plaintiff did not tell Schierland that he was feeling suicidal and showed no signs that he might be suicidal or might harm himself. He asked only to be placed in an observation cell, but Schierland explained that he could not move the plaintiff to an observation cell without an order from the Psychological Services Unit. Later, without additional requests or signs of distress from the plaintiff, Schierland asked Officer Bourassa to check on the plaintiff based on the earlier interaction. Bourassa did as requested, and the plaintiff told Bourassa only that he had spoken with the Psychological Services Unit about his

suicidal thoughts. Bourassa avers that the plaintiff did not state he was going to harm himself, showed no sign that he had harmed himself and gave Bourassa no indication that he was at immediate risk for suicide or self-harm. These facts put the defendants on notice only of the plaintiff's troubled thoughts. They did not put the defendants on notice that the plaintiff "would imminently attempt to harm himself." Wright, 853 F. App'x at 24.

The facts, including the defendants' undisputed declarations, also show that the defendants did not *perceive* a significant risk that the plaintiff would harm himself based on his comments. The defendants spoke with the plaintiff and looked for signs that he would harm himself (or already had). Observing no such signs, the defendants took no further action. The cases discussed above indicate that no further action was required under the Eighth Amendment. Rather than being deliberately indifferent to or ignoring the plaintiff's situation, the defendants' actions in notifying a sergeant, speaking with the plaintiff and calling for medical help after finding the plaintiff with the ligature around his neck demonstrate that they responded reasonably. See Barrows v. Goldman, 858 F. App'x 199, 201 (7th Cir. 2021) (citing Farmer, 511 U.S. at 843; and Johnson v. Dominguez, 5 F.4th 818, 824–25 (7th Cir. 2021)) ("A defendant is not liable under the Eighth Amendment if he responds reasonably to a risk, even if the harm was not avoided."); Wright, 853 F. App'x at 24 (noting that prison officials acted appropriately by immediately responding and providing medical treatment for prisoner who announced he had ingested pills).

The evidence does not indicate that the plaintiff posed an immediate risk of harm to himself. His comments alone were insufficient to put the defendants on

Case 2:20-cv-01214-PP   Filed 12/31/21   Page 13 of 15   Document 33

notice of an objective, substantial risk to the plaintiff's health or safety. Nor did the defendants subjectively perceive an immediate threat to the plaintiff's safety. Because no reasonable jury could conclude otherwise, the defendants are entitled to judgment as a matter of law.[1]

## III. Conclusion

The court **GRANTS** the defendants' motion and amended motion for summary judgment. Dkt. Nos. 23, 30.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of

---

[1] Because the court is granting summary judgment to the defendants on the merits, it need not reach the question of whether they are entitled to qualified immunity. See Sierra-Lopez v. County, No. 17-CV-1222, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing Viero v. Bufano, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and Antepenko v. Domrois, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of December, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**